IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRUCE ENDICOTT,

        Plaintiff,

    v.

DESCHUTES COUNTY, a political
subdivision of the State of Oregon, and
PATRICK FLAHERTY, individually
and in his official capacity as District Attorney
of Deschutes County, Oregon,

        Defendants.

_____

Civ. No. 6:14-cv-1810-MC

OPINION AND ORDER

MCSHANE, Judge:

      Bruce Endicott brings this action against his former employer, Deschutes County, and

Patrick Flaherty, the County's former District Attorney. For his first cause of action

(defamation), Endicott alleges Flaherty "published false and defamatory statements to third

1 – OPINION AND ORDER

parties in his office and/or within the County" regarding the reasons for Endicott's termination.

For his second cause of action (under 42 U.S.C. § 1983), Endicott alleges that his termination

violated his First Amendment rights. For his final cause of action (intentional interference with

economic relations or IIER), Endicott alleges Flaherty intentionally interfered with Endicott's

employment with the County.

Flaherty's alleged defamatory statements, at this stage, are not absolutely immune. Thus,

the County's motion to dismiss Endicott's defamation claim is DENIED. Because Endicott does

not allege he engaged in constitutionally protected conduct, the County's motion to dismiss

Endicott's First Amendment claim is GRANTED. Because Endicott alleges Flaherty acted

outside the scope of his employment, Flaherty's motion to dismiss Endicott's IIER claim is

DENIED.

BACKGROUND

At all material times, Patrick Flaherty was the District Attorney for Deschutes County

and was a candidate for re-election.[1] Flaherty, in an attempt to further his political prospects in

that election, hired Bruce Endicott as the Administrator of the Office of the District Attorney.

Endicott's cousin was the Mayor of Redmond, Oregon and Flaherty hoped Endicott would obtain

the political endorsement of his cousin in support of Flaherty's re-election. During the course of

Endicott's employment at the District Attorney's Office, Flaherty reiterated his desire that

Endicott obtain his cousin's support. But Endicott failed to deliver his cousin's support, and

Flaherty lost the election. Two days after the election, on May 22, 2014, Flaherty terminated

Endicott for political reasons. In the course of terminating Endicott, Flaherty made false

statements to third parties regarding Endicott's attitude and performance.

---

[1] The court takes all relevant facts in this opinion from the allegations in the complaint.

STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

DISCUSSION

I.      **County's Motion to Dismiss Endicott's First Claim for Relief – Defamation**

The County moves to dismiss Endicott's defamation claim on the ground that the County is absolutely immune from liability. Under Oregon law, a state executive officer has an absolute privilege to publish defamatory statements in the course of performing his or her official duties. *Shearer v. Lambert*, 274 Or. 449, 454 (1976). Endicott argues that, first, Flaherty was not a state executive officer and second, if Flaherty was an executive officer, his defamatory statements were not made in performance of his official duties.

To date, no Oregon court has held whether the absolute privilege to publish defamatory statements applies to district attorneys. *Beason v. Harcleroad*, 105 Or. App. 376, 385 (1991). Nonetheless, courts have consistently adopted the view that the privilege applies to "inferior state officers no matter how low their rank or standing." *Shearer*, 274 Or. at 454; *Chamberlain v. City of Portland*, 184 Or. App. 487, 492 (2002) (privilege applies to sworn city police officers). And throughout Oregon's history, courts have viewed district attorneys as state officers who act as prosecutors for the executive branch. *State v. Coleman*, 131 Or. App. 386, 390 (1994). Thus, the privilege does, in some circumstances, apply to district attorneys.

In this case, the privilege is available to both defendants if Flaherty published the alleged defamatory statements in the course of performing his official duties. *See* ORS 30.265(5) ("Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employee or agent of a public body when such officer, employee or agent is immune from liability."). The issue of whether a public officer published a defamatory statement while performing his or her official duties is a question of fact, and depends on whether the officer was authorized to perform the duty. *Beason*, 105 Or. App. at 384-85. The privilege extends to mandatory, discretionary, and ministerial duties. *Chamberlain*, 184 Or. App. at 492.

The County argues that because Endicott alleges Flaherty acted "within the course and scope of [his] agency" for the County when he published the defamatory statements, Flaherty was performing his official duties and therefore is entitled to absolute immunity. But that allegation is not dispositive; rather, the issue is whether Flaherty was performing his official duties while acting within the course and scope of his agency. *See Sandrock v. City of Corvallis*, 58 Or. App. 312, 315 (1982) (plaintiff's allegation that defendant's defamatory statements were made in course and scope of defendant's employment was not dispositive on the issue of whether

4 – OPINION AND ORDER

defendant acted pursuant to his official duties).

Endicott alleges that "Defendant Flaherty published false and defamatory statements to third parties in his office and/or within the County of and concerning Plaintiff, to wit, that Plaintiff was unfit for his position as Administrator because he was insubordinate and had poor judgment." Compl. ¶ 6. A court may not grant a motion to dismiss, based on a defense of absolute privilege, if the plaintiff has alleged the defendant's statements were outside the scope of the defendant's official duties. *Slover v. Or. State Bd. of Clinical Social Workers*, 144 Or. App. 565, 569 n.2 (1996). For purposes of his first claim for relief, Endicott did not expressly plead that Flaherty's statements were "outside the scope of his official duties." But the court interprets Endicott's allegation that "Defendant Flaherty published false and defamatory statements to third parties in his office and/or within the County of and concerning Plaintiff" as sufficient to create an inference that Flaherty published the alleged defamatory statements outside the scope of his official duties. Thus, the County's motion to dismiss Endicott's defamation claim is DENIED.

## II.    County's Motion to Dismiss Endicott's Second Claim for Relief – 42 U.S.C. § 1983.

The County moves for an order dismissing Endicott's § 1983 claim on the ground that the allegations fail to establish any violation of Endicott's First Amendment rights. Endicott alleges Flaherty terminated him "because of his association by Defendant Flaherty with Plaintiff's cousin; and/or because of Plaintiff's failure to deliver his cousin's political support to Defendant Flaherty." Compl. ¶ 12. In doing so, Endicott argues Flaherty violated the First Amendment.

A public employer may not unduly abridge an employee's First Amendment rights. *Keyishian v. Bd. Of Regents*, 385 U.S. 589, 605-06 (1967). In order to maintain a § 1983 claim against a public employer, an employee must show that: (1) the employee engaged in

5 – OPINION AND ORDER

constitutionally protected speech or association; (2) the employer took adverse employment action against the employee; and (3) the employee's protected speech or association was a substantial or motivating factor for the adverse employment action. *Mt. Healthy City Bd. of Education v. Doyle*, 429 U.S. 274, 287 (1977); *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). If the plaintiff meets his prima facie burden, the defendant can prevail if it can show by a preponderance of the evidence that it would have taken the same action regardless of the plaintiff's protected conduct. *Id*. The County's motion presents one question: did Endicott allege facts to suggest he engaged in constitutionally protected speech or association?

**A. Constitutionally Protected Speech or Association**

1. Freedom of Speech

A government employee alleging that his employer violated the right to free speech must satisfy three elements: (1) he spoke on a matter of public concern; (2) he spoke as a private citizen and not as a public employee; and (3) his protected speech was a substantial or motivating factor in the defendant's adverse employment actions. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

In this case, Endicott does not allege that he spoke on a matter of public concern. A government employee's refusal to speak in the face of a request to speak is, under some circumstances, protected conduct. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *Sykes v. McDowell*, 786 F.2d 1098, 1104 (11th Cir. 1986) ("A public employee who positively asserts the right not to speak when ordered to support his employer is within the protection of the first amendment."). But Endicott does not allege Flaherty requested him to speak publicly and support Flaherty's re-election campaign. Nor does Endicott allege that he asserted the right not to speak. Thus, Endicott has not alleged an actionable violation of his right to free speech.

6 – OPINION AND ORDER

2. Freedom of Association

Endicott further alleges that Flaherty violated his freedom of association. Compl. ¶ 12. The First Amendment generally prohibits government officials from taking adverse employment action against a government employee based on the employee's political activity or affiliation. *Rutan v. Republican Party*, 497 U.S. 62, 73-74 (1990). "The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Id.* at 76. The freedom not to support a candidate or political cause is integral to the freedom of association. *Id.* at 69 ("conditioning employment on political activity pressures employees to pledge political allegiance to a party with which they prefer not to associate, to work for the election of political candidates they do not support"); *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) (freedom of association presupposes a freedom not to associate). Thus, the First Amendment bars a government employer from taking adverse employment action against an employee solely for not being a supporter of the party in power. *Id.*

Endicott's allegations are not entirely clear or specific. Endicott argues they can be read as an allegation that Flaherty fired Endicott for simply choosing to not explicitly support Flaherty's reelection bid. Several circuits have held that an employer may not discipline an employee based on the employee's decision to remain politically neutral or silent. *See Wrobel v. Cnty. of Erie*, 692 F.3d 22, 28 (2d Cir. 2012); *Welch v. Ciampa*, 542 F.3d 927, 939 n.3 (1st Cir. 2008); *Gann v. Cline*, 519 F.3d 1090, 1095 (10th Cir. 2008) (rejecting argument that plaintiff's claim failed because the plaintiff did not actively campaign against her employer or demonstrate an opposing political affiliation); *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 272-73 (3d Cir. 2007). Additionally, the Supreme Court has held that, absent circumstances not present here,

"the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power." *Rutan*, 497 U.S. at 64.

Taken as a whole, the complaint deals not with Endicott's own speech, but rather with Flaherty's perception of Endicott's speech or political support. To the extent Endicott argues that he was retaliated against "for his perceived lack of support" of Flaherty's bid for re-election, the claim fails to state a claim. An employee states a First Amendment claim only where the employee's actual, rather than perceived, exercise of constitutional rights prompted the employer's adverse action. *Wasson v. Sonoma Cnty. Junior Coll.*, 203 F.3d 659, 662 (9th Cir. 2002). A First Amendment claim must rest upon the actual exercise of a constitutional right. It may be the right to speak on a political issue, to associate with a particular party, or to not speak or associate with respect to political matters at all. The crucial issue is Endicott's actual exercise of his own rights, as opposed to Flaherty's perception of Endicott's speech. Because the complaint fails to allege Endicott actually engaged in any protected speech, the County's motion to dismiss Endicott's § 1983 claim is GRANTED.

### III.    Flaherty's Partial Motion to Dismiss Endicott's Third Claim for Relief – Intentional Interference with Economic Relations

To state a claim for IIER, a plaintiff must allege: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages. *Allen v. Hall*, 328 Or. 276, 281 (1999).

Flaherty argues that Endicott has not alleged three elements: (1) an intentional interference with a business relationship; (2) by a third party; (3) for an improper purpose. Flaherty's primary argument is that he, as the District Attorney, was not a third party to

Endicott's relationship with the County.

In a typical IIER claim, the person interfering is a stranger to the professional or business relationship. *Wampler v. Palmerton*, 250 Or. 65, 74 (1968). In general, a public employee is not a third party when he acts within the scope of his employment. *McGanty v. Staudenraus*, 321 Or. 532, 538 (1995). Under the Oregon Tort Claims Act, if the employee acted within the scope of her employment, the court must substitute the public body for the individually named defendant. *See* ORS 30.265.

An employee acts within the scope of her employment if: (1) the employee's act occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least partially, by a purpose to serve the employer; and (3) the employee's act was of a kind which the employee was hired to perform. *Chesterman v. Barmon*, 305 Or. 439, 442 (1988). That an agent of a public body exercised her power in terminating an employee is not conclusive on whether the agent acted within the scope of her employment. *Boers v. Payline Systems, Inc.*, 141 Or. App. 238, 244 n.2 (1996) (jury could find that defendant improperly exercised his authority when he fired plaintiff because he did not intend to benefit the corporation by his actions). Stated another way, as it is undisputed that Flaherty generally had the discretion and authority to hire and fire employees of the Office of the District Attorney, the question here is whether Flaherty acted not to serve the office or County, but rather "was solely motivated by a purpose to serve himself." *Kaelon v. USF Reddaway, Inc.*, 180 Or. App. 89, 97 (2002).

Endicott alleges that he was terminated "for political reasons, because of his association by Defendant Flaherty with Plaintiff's cousin, and/or because of Plaintiff's failure to deliver his cousin's political support to Defendant Flaherty as said Defendant had desired." Compl. ¶ 12. In

9 – OPINION AND ORDER

the alternative, Endicott alleges Flaherty "acted outside the scope and agency of his employment for Defendant County, and intentionally interfered with Plaintiff's employment with Defendant County by unlawful means and/or for an unlawful purpose." Compl. ¶ 16. These facts are sufficient to infer that Flaherty terminated Endicott for an improper purpose; solely to serve his own political ends. *See Fearing v. Bucher*, 328 Or. 367, 374-75 (1999) (noting jury could view pastor's actions preceding sexual assault of a minor as motivated solely to further pastor's own interest, or, in the alternative, as motivated to fulfill his priestly duties). If Flaherty in fact acted outside the scope of his employment, and if Flaherty was not motivated, even in part, to serve the County, then Endicott may prevail on his claim of IIER against Flaherty. Endicott faces substantial——if not insurmountable—hurdles in proving Flaherty acted solely for his own benefit. But the appropriate stage for this hurdle is at trial or summary judgment, not a motion to dismiss. Accordingly, Flaherty's motion to dismiss the IIER claim is DENIED.

## CONCLUSION

For the foregoing reasons, the County's motion to dismiss Endicott's First Amendment claim is granted. This claim is dismissed, without prejudice. Flaherty's and the County's motions to dismiss Endicott's first and third claims for relief are DENIED. Plaintiff is granted fourteen (14) days to file an amended complaint.

IT IS SO ORDERED.

DATED this 26th day of February, 2015.

_____/s/ Michael J. Mcshane_____
Michael J. McShane
United States District Judge